2012, 5098. Mr. Allen? Mr. Allen, you've asked to reserve three minutes for rebuttal. Is that correct? That's correct. Okay. All right. You may begin. Thank you. I think the best place to start with this case is sort of the misstep that my clients took, and I represent Mr. and Mrs. Alli as well as the corporation, VSA Corp., was the misstep they took, getting rid of their attorneys and proceeding pro se. I say that only because there are a number of issues that, as I got on the case, became more and more frustrating. So I guess I'm just saying that for my edification more than anything. But I think in terms of the issues that we had raised in our brief, the one that has the most effect on that is the $800,000, $800-plus-thousand paid to the security firm in Detroit, Michigan. There is an affidavit from the director of HUD that states that this security service did provide this service for the department. But in terms of any specifics or whether or not this is reasonable, that's sort of where I can't wrap my head around this very well in terms of... But you've got a lot of procedural hurdles that you have to get over before we even get to this question, right? That's correct. You don't dispute that a corporation must appear through counsel in federal court, correct? Correct. And so we have the issue that the corporation could not proceed pro se, correct? Correct. And so once the judgment was entered against the corporation, there's nothing that can be done with respect to that judgment given the failure to appeal it, correct? Correct. And I think that's another one of the missteps by my clients. And I understand a pro se litigants held to the same standard as everyone else, so I can't complain about that. And I didn't obviously raise that in my brief. But I think that's one of the things that puts us where we are procedurally. And then I guess that puts you in the position that your professors in law school tell you never to be in and say, well, that's not fair. And I think in this case, the 800 plus thousand dollars, given the fact that there isn't a sort of item, I don't know what it's for. I mean, it may be a valid expense, and that's sort of why when I got involved in the case, I asked for discovery. And probably rightfully so, the judge said no, because this case has been pending for a long time, almost as long as I've been a lawyer. So it seems that this may be a valid expense. And it's by far the biggest problem that I have is that there isn't some type of itemized expense. If a client wants to know what I did for them, I have to provide them. You did get an itemized expense. Certain parts of it had been redacted. Is that correct? Well, that relates to the relocation expenses from each of the three properties. To my knowledge, there isn't any, and opposing counsel can obviously correct me, but I've never seen anything that lists what they've done. Is it to provide guards? Is it to pay a subcontractor to build fences around? I mean, this building is an abandoned building in Detroit. And I've my family is from Detroit. Certainly that part of Detroit doesn't require $800,000 worth of security. Over what period was the security service provided? I believe it was the time after the tenants had moved out and there was going to be relocation. Do you know roughly how many months? I would say it's close to a year. Certainly I can look at my notes again, but I think it's... These are three separate properties? Yes. Ingrid, Riverside, and... Collingwood. But I mean, if you want us to believe this is an unfair number, other than just saying, I grew up in Detroit and I've got family from Detroit, and I don't think you have to be that concerned in this area. Don't you have a concrete... No. I mean, I think the record is sparse from our end because we don't have the itemized... I think it's sort of a catch-22. Since we weren't able to conduct the discovery, we weren't able to say, well, this is... Like I said, it's possible that this is a valid expense. But without that, I don't think I could go to someone else and say, does this look all right? You're not disputing the finding as it relates to piercing the corporate veil, correct? I don't think that I can. All right. So you don't dispute that. You don't dispute the judgment against the corporation. So I think you can see that procedurally, the race judicata determination has some pretty good legs, right? That this has already been decided. Yes. All right. So if what you're saying is you're falling back on a fairness argument, I'm having a hard time with the notion that you don't at least have some kind of data you could point us to as to why you think it's Well, I think if you look at what the government has set forth, it's essentially just the affidavit from the head of HUD. Certainly, if you're going to enter a judgment against my clients, you would hope that there would be more than that. I understand that it's their responsibility to – I understand I sort of came to this late. So a lot of the damage had been done long before I got to the case. In connection with your request for the judge to reconsider these issues, did you proffer any affidavit from your clients saying we're familiar with this area, we've operated this building, we've never used this kind of security before, the security that we paid for was a much lower number? I mean, did you do anything to try to create a material issue of fact? No. So what is it that you want us to do? Well, I think in terms of the granting of summary judgment for damages, I think that there is an issue of material fact, only because this $800,000, there isn't any substance to it other than the director saying that these people provided security on behalf of HUD. And I think certainly that at the time that discovery was completed, there wasn't anything done either by crowd counsel or by my clients per se that can rebut that. I think that's a good point. Frankly, I didn't think of it. It may have been something that we could have put into the record or had someone say that. But I think that our argument in regards to the summary judgment issue on damages was just that there wasn't enough. And that is something that shouldn't survive summary judgment because there were issues of whether or not this was reasonable. But you as the opposer to summary judgment, I mean, the obligation is on you to present evidence that shows a genuine issue of material fact that's in dispute. Yes. And you didn't do that. Correct. So what would you like for us to do? Well, like I said, we would like for you to reverse the finding of summary judgment and send it back so we can have a hearing on the damages. Or at least have the government provide discovery as to what this $800,000 is so we know what we're paying a judgment for. If there's no more questions, I'll… Thank you. You'll still have three minutes for rebuttal.  This court held in the SRI International v. Matsushita case that a party opposing summary judgment has to come forward with more than a mere denial or a conclusory allegation. They have to set forth specific facts that create a genuine issue for trial. I believe opponents have just conceded that they didn't actually do that in this case, Your Honors. And for that reason alone, they're not entitled to relief. Let me just get a factual question resolved that I'm a little confused about. With respect to the security expenses, I had thought in looking at the numbers in the briefs that the costs that were associated with the, what is it, Riverside and Pingree properties were relocation costs only, and that the security costs were allocated only to Collingwood. And I think that… You're correct about that, Your Honor. All right. So this is $800,000 in security for what period of time? For the approximately 13 months that HUD became the mortgagee in possession of the Collingwood property. But for only the one property? For only the Collingwood building, Your Honor. And how large is this property? I'm not entirely sure how large it is, Your Honor. I know it's a multifamily dwelling. The court in the 2010 opinion in which it entered a default judgment against BSA Corporation devotes a fair amount of time to discussing the various expenses, including the security fees that were incurred in connection with Collingwood. What does the record show by way of detail about the security fees other than this bottom line $800,000? According to a declaration that was filed by Ruth Pompa of HUD, what these security fees were paid for were, they were actual security to protect not only the building but also the personnel at Collingwood and the residents of Collingwood. There's not a great deal more information as to a breakdown of what specific tasks were performed by LaGuardia. But again, I think it's important to note that as the lower court pointed out in this case, appellants were given ample opportunity to depose the government representatives who compiled and developed the evidence in support of the government's damages claims. They could have inquired into, I heard Mr. Allen lament that there wasn't a detailed breakdown of these security expenses. Well, the appellants had the opportunity to inquire more about these security expenses, but as the lower court found, they inexplicably just decided not to do so. Therefore, to the extent that appellants are throwing up their hands now and saying, well, we lack sufficient evidence to rebut the government's damages claim, the reason they lack that evidence is a result of their own inaction. Even if you're correct with respect to the general concepts on summary judgment, it begins with the proposition that there must be a well-supported motion for summary judgment before there's an obligation to respond on the non-movement. And I think that's at least one of the questions that's posed here by your friend on the other side, and that is, was that initial motion well-supported? Did, in fact, your affidavit say anything more than we pay these monies? Well, the affidavit was not brimming with detail. That's sort of the understatement, I think. The court, in fact, had some questions about the expenses that were incurred by the United States, and as it acknowledges in its 2010 opinion in which it entered the default against BSA Corporation, actually directed the government to respond to a number of questions that the court had, including why the government seemed to be paying expenses after it was no longer the mortgagee in possession of the Collingwood Building. And the government filed a subsequent affidavit in which it did respond to those questions that the court had. It explained that although these expenses were paid after the United States had ceased being the mortgagee in possession, they were for services that were provided before then. We don't have in the Joint Appendix those materials, do we? No, those materials aren't in the Joint Appendix, Your Honor. I can give you the citation for the 2010 opinion. We have the citation, we just don't have the opinion. All right. Yeah, the citation is... 93, Fed Plan 172. If Your Honor will bear with me for one moment, I think I can... Yes, that is correct, Your Honor, 2010. And again, it sounds like Appellant is no longer challenging the reasonableness of the relocation expenses or the management fee expenses, but I'd like to touch upon those very briefly. No, because I'm not done with the $800,000. All you've said is that you addressed to the lower court why you kept paying even after you were a mortgage holder, though you didn't really explain to us what your response was. But that still doesn't tell me where in the record there was actual evidence, be it by way of affidavit or otherwise, of the reasonableness of the $800,000. Well, if I could back up for one second and just... The reason that they were continuing to pay the expenses after they were no longer the mortgagee in possession is that those were expenses that had accrued before the United States sold the building. So it was in essence, for instance, if Your Honor were to move, you might presumably still have to pay a phone bill or two relating to the former property that you incurred before you actually moved. So that was the reason that they continued to pay the expenses beyond then. In terms of offering evidence as to the reasonableness of those expenses beyond just showing that those expenses were actually incurred, it's not entirely clear from the record that the United States' affidavit or other evidence that was presented spoke directly to that issue. $800,000 for a year's time, you could have a small police force for that. I mean, that's a lot of money. It does seem to be a substantial amount of money. But again, appellants were given ample opportunity to inquire into the specifics of these expenses, and they elected not to do anything. They were given ample opportunity to depose the government witnesses, who the court in fact directed be made available for depositions. They chose not to do so. At a certain point, you have to say that the law helps those who help themselves, and appellants made no effort to help themselves. They could have inquired into the reasonableness of these expenses. They could have come up with specific facts, which this court has said are required for a party opposing summary judgment, and they just chose not to do so. And for that reason, we believe that this court should affirm the entry of summary judgment in favor of the United States. With respect to the management fees issue, appellants have complained that the United States redacted the names of the tenants that had to be relocated from the Pingree and the Riverside buildings. And they say that as a result, they can't be sure that the tenants that had to be relocated were actually living in the buildings. But as the lower court pointed out, first of all, the United States did not redact the unit numbers from its damages documents. So armed with that information, appellants could then have cross-referenced that with their own documents to discover not only whether those units were in fact occupied at the time of relocation, but presumably since they were the landlords of these buildings, they could have cross-referenced the unit numbers and identified the actual tenants who were living in these buildings as well. And once again, they had ample opportunity to depose the government witnesses who gathered and developed the damages evidence with respect to these relocation expenses. In fact, the United States provided an itemized breakdown of relocation expenses incurred by unit. Once again, appellants point to no specific relocation expense that they think is unreasonable. They don't identify what they think reasonable relocation expenses would be. They just say, we're not sure that they're reasonable. Again, that's just a mere denial or a conclusory allegation, which this court has already held is insufficient in the SRI international case. And finally, with respect to the management fees issue, once again, as the lower court pointed out, appellants offer no evidence to rebut the declaration and spreadsheets that were presented by the government in support of its claim for management fees. They simply say, or they don't even demonstrate that the United States' evidence is inadmissible or somehow unreliable. They don't identify a single specific fact that undermines the reasonableness of the management fees claim by the United States. Is the management fee amount, in the case of the Collingwood property, the difference between the $800,000 and the slightly more than a million dollars that was allocated to Collingwood? I believe that the extra fees that were included with respect to Collingwood were... Oh, was that relocation? Some of them were management fees. There seems to be about $200,000 difference between... Yeah, there were $90,000 in Collingwood relocation fees. So a little over $100,000 in management fees? Well, there were $25,000 in foreclosure costs. I see. And then when you added those together with the security, those came up to, I think, a little more than a million dollars for Collingwood, and then the rest of the fees were associated with Pingree and Riverside. Where did the management fees come in? I'm not sure that the management fees were... Were they not allocated property by property? I know that they were allocated specifically with... The management fees that are challenged by appellants, anyway, were allocated specifically to the Pingree and Riverside buildings. I see. I'm not sure of the specific breakdown beyond that. But once again, appellants offer no specific facts that suggest that these management fees were unreasonable. They just come forward with a mere denial again. And so for these reasons, we respectfully request that this court affirm the judgment of the lower court entering summary judgment in favor of the United States. Thank you. Mr. Allen? In terms of the management fees and the relocation fees, it's certainly not that we concede those facts. I just thought that the oral argument time would be better spent talking about this security fund. And I think the appellee hasn't provided the court with a good answer as to what the detail is on these expenses. So I think for that reason alone, we would ask you to reverse summary judgment, at least to the security fund. But I have nothing further. Appreciate your time. Thank you.